Gregg D. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, L.L.C.
64 Diamond Spring Road
Denville, New Jersey 07834
(973) 627-8000
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.C.N. 133800969 PTY, LTD (A corporation organized under the laws of the Commonwealth of Australia)<br><br>    Plaintiff<br><br>    v.<br><br>KENNEDY FUNDING, INC. (A Corporation organized under the laws of the State of New Jersey)<br><br>    Defendant | Civil Action No.: 2:13-cv-<br><br>**COMPLAINT AND JURY DEMAND** |

### Civ. Rule 10.1 Statement

**PLAINTIFF:**

A.C.N. 133800969 PTY, LTD, 1st Floor, 18-22 Riseley Street, Ardross, WA 6153, in the Country of Australia

**DEFENDANTS:**

KENNEDY FUNDING, INC., 930 Sylvan Avenue, Suite 110, Englewood Cliffs, New Jersey.

### JURISDICTION

1. Plaintiff brings this action against defendants to redress violations of the statutes of the State of New Jersey and the common law.

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1332(a)(2).

3. Venue is proper in this District pursuant to 28 U.S.C. §1391.

### FACTS COMMON TO ALL COUNTS OF COMPLAINT

1. A.C.N. 133800969 PTY, LTD (Plaintiff) is a corporation organized under the laws of the Commonwealth of Australia with its principle place of business located at 1st Floor, 18-22 Riseley Street, Ardross, WA 6153.

2. KENNEDY FUNDING, INC., (Defendant) is a corporation organized under the laws of the State of New Jersey.

3. Plaintiff is engaged in the business of operating nursing homes in the Commonwealth of Australia.

4. Defendant is engaged in the business of commercial real estate lending. It maintains a web-site at www.KennedyFunding.com.

5. Defendant claims on their web-site that "Kennedy Funding is a commercial real estate lending company that specializes in unconventional financing where speed and attention to special circumstances are critical."

6. Defendant claims on their web-site that they "recognize the importance of speed, and that loans must often be structured around each client's unique set of financial circumstances."

7. Defendant claims on their web-site that they have been providing "lightning-fast service and creative funding solutions throughout North America since 1987, and internationally since 1996."

8. Defendant claims on their web-site that "At Kennedy Funding, you get the money you need, when you need it."

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

9. Defendant claims on their web-site that "The company credits its tremendous growth to its creative approach, stringent loan-to-value ratios, business savvy and hands-on-style, which has the principals doing work that in other lending institutions would be farmed out to 'experts'."

10. The Defendant is highly experienced in the area of commercial real estate lending.

11. The Defendant has expertise in the area of commercial real estate lending.

12. The Defendant's web-site contains various images including but not limited to a man hanging on the hands of a large clock on the outside of a building with a caption that reads "When Your Up Against The Clock – You Can Get Millions Fast!".

13. In or around July, 2010 Plaintiff sought financing for its business.

14. Plaintiff negotiated a "loan commitment" with the Defendants dated July 15, 2010 whereby the Defendants agreed to loan $17,000,000.00 to the Plaintiff. A copy of the "loan commitment" is attached hereto as **Exhibit A**.

15. Defendants agreed to extend a loan of $17,000,000.00 to Plaintiff.

16. The parties agreed that the loan would close on or before August 13, 2010.

17. The "loan commitment" states at page 3 in the section entitled "Acceptance of Commitment" that "[t]he commitment and all of its terms and conditions will become effective only upon delivery to this office of a signed copy of this commitment, duly accepted by the Borrower, accompanied with the commitment fee in the amount of Six Hundred Seventy Thousand Dollars ($670,000) which is non-refundable and earned for, among other things, the commitment to provide funds."

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

18. The "loan commitment" states at page 4 in the fourth paragraph that "[t]his letter will become a commitment once signed by all parties and returned with the Six Hundred Seventy Thousand Dollars ($670,000) as outlined above."

19. The "loan commitment" states at page 7 in the section entitled "Commitment Fee Modification" that "[n]otwithstanding the above requirement to pay Six Hundred Seventy Thousand Dollars ($670,000) at the signing of the commitment, as consideration for the parties unconditionally and irrevocably waiving all right to trial by jury and the parties agreeing to the Choice of Forum and Liquidation of Damages clauses, KFI will accept payment of the Six Hundred Seventy Thousand Dollars ($670,000) in the following manner:

   a. Two Hundred ~~Fifty~~ (sic) Thousand Dollars ($200,000) to be paid at the time this commitment is signed, prior to our due diligence, which signing will be no later than July 16, 2010, **time of the essence**;

   b. Four Hundred Seventy Thousand Dollars ($470,000) to be paid at the closing or upon Borrower electing not to proceed to a Loan closing.  In addition, any default by the Borrower under this commitment, or other failure of Borrower to comply with this commitment, or misrepresentation by Borrower of any fact or state of facts to KFI either in connection with this commitment or otherwise, or any material adverse change of any type shall not relieve Borrower of its obligation to pay such amount to KFI."

20. Plaintiff fulfilled all due diligence requirements imposed by Defendant.

21. Plaintiff paid the Defendant $200,000.00 as required in the "loan commitment"

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

22. The loan was subsequently approved and settlement was scheduled by however the Defendant failed to close the loan.

23. After Plaintiff fulfilled all due diligence requirements the Defendant for the first time claimed that the collateral for the loan was not sufficient for their purposes.

24. Soon thereafter, Plaintiff proposed to substitute security of another facility.

25. Defendant agreed to inspect that facility and demanded that the Plaintiff pay for such inspections.

26. Plaintiff agreed and sent the required payment to the Defendant.

27. During this time extensions of the loan commitment are negotiated and each time the Plaintiff was required to pay the Defendant for the extensions.

28. On May 6, 2011, Evan Bell as a representative for the Defendant emailed the principle of the Plaintiff and for the first time raised concerns regarding mortgagee protection for breach of lending covenants on 6 May 2011.

29. The Defendant stated that they were not licensed to run healthcare facilities in Australia and could therefore not foreclose on such facilities.

30. Despite not being required to do so, the Plaintiff arranged for a third party to  act as a 'Key Person' under the definition of the same in Australian Statute Aged Care Act 1997; should foreclosure be necessary  (a practice often used by other companies within the Aged Care Sector).

31. Despite the forgoing the Defendant failed to close on the loan as required in the "loan commitment."

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

## COUNT ONE
### (Breach Of Contract)

32. The Plaintiff repeats and realleges all of the allegations and statements set forth in each of the preceding paragraphs as if set forth herein at length.

33. The Defendant entered into an agreement Plaintiff herein whereby Defendant promised and agreed to loan $17,000,000.00 to Plaintiff.

34. The Plaintiff paid an advanced fee of $200,000.00 to Defendant. for their commitment to loan funds to the Plaintiff.

35. Plaintiff was ready willing and able to close on the loan however the Defendant failed and refused to close the loan.

36. Plaintiff has performed all of its obligations under the agreement.

37. The Plaintiff requested the return of the advance fees paid by it to the Defendant.

38. The Defendant failed and refused to return the funds to the Plaintiff.

39. The Defendant wrongfully breached the "loan commitment" it had with the Plaintiff when it failed to loan the funds and thereafter refused to refund the advanced fees paid to them by the Plaintiff.

40. As a direct and proximate result of the breaches referenced in the preceding paragraphs, the Plaintiff has been damaged.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant on COUNT ONE of its Complaint, for:

    a.    Compensatory damages;

    b.    Consequential damages;

    c.    Attorney's fees, costs and interest;

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

d.      For such further relief as the Court deems equitable and just;

## COUNT TWO
### (Unjust Enrichment)

41. The Plaintiff repeats and realleges all of the allegations and statements set forth in each of the preceding paragraphs as if set forth herein at length.

42. The actions of the Defendant in accepting and retaining an advance fee as partial payment of certain of the fees that would be due upon the closing of a loan which the Defendant made amounts to the unjust enrichment of the Defendant.

43. The Defendant is in possession of funds belonging to the Plaintiff.

44. The total sum retained by the Defendant is $200,000.00.

45. Plaintiff paid these funds to the Defendant with the reasonable expectation of receiving a benefit from the Defendant.

46. The Plaintiff received no benefit from the Defendant to justify their receipt and retention of the funds.

47. The Defendant did nothing to justify their retention of the advance fee paid to them by the Plaintiff.

48. The document referred to herein as a "loan commitment" between the parties by its explicit terms – in two separate paragraphs – provides that the "loan commitment" will not be effective until such time as the total commitment fee of $670,000 and that such payment is due at the time of the closing on the proposed loan.

49. The Defendant never agreed to close on the subject loan thus the balance due on the advance fee was never paid.  Consequently the "loan commitment" never could have become a binding contract between the parties.

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

50. Insofar as the closing of the loan never occurred and because that was a precondition to the "loan commitment" becoming a binding agreement, allowing the Defendant to retain Plaintiff's advance fee would amount to unjust enrichment.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant on COUNT TWO of its Complaint, for:

e.    Compensatory damages;

f.    Consequential damages;

g.    Attorney's fees, costs and interest;

h.    For such further relief as the Court deems equitable and just;

## REQUEST FOR DISCOVERY

Please be advised that pursuant to Federal Rule of Civ. Proc. 26, demand is hereby made for all parties to this action to provide to the Plaintiff all discovery as to all issues.

## DEMAND FOR JURY TRIAL

Please take notice that the Plaintiff hereby demands a trial by jury on all claims so triable in the above captioned matter.

## DESIGNATION OF TRIAL ATTORNEY

Please Take Notice, that Gregg D. Trautmann, Esq. of the law firm of Trautmann & Associates, LLC, is hereby designated as trial attorney for the Plaintiff in the above captioned matter.

TRAUTMANN & ASSOCIATES, LLC
Attorneys for Plaintiff

Date:  January 7, 2014                By:  /s/ *Gregg D. Trautmann, Esq.*
                                              Gregg D. Trautmann, Esq.

TRAUTMANN
&
ASSOCIATES,
LLC
262 East Main Street
Rockaway, NJ 07866
973-627-8000
www.Trautmann.com

EXHIBIT (A)

## KENNEDY FUNDING, INC.

TWO UNIVERSITY PLAZA
SUITE 402
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-8500
FAX: (201) 342-8373
www.kennedyfunding.com

July 15, 2010

A.C.N. 133800969 Pty, Ltd.
1ˢᵗ Floor, 18-22 Riseley Street
Ardross, WA 6153
Attn: Mr. John Gillett

Re:    Financing Request $17,000,000- Any and all reference to currency in this document shall mean U.S. Dollars only.

Dear Mr. Gillett:

We are pleased to advise you of our commitment to provide financing. This commitment supersedes all previous communications and correspondence without limitation. The terms of this Loan Commitment are as follows:

**LENDER:**    Kennedy Funding, Inc. (KFI), or any other Lender designated by KFI. KFI intends to bring participants into this transaction and reserves the right to assign or sell participations in all or part of the Loan (the "Loan") described hereunder.

**BORROWER:**    A.C.N. 133800969 Pty, Ltd.    Tax File# 25133800969
1ˢᵗ Floor, 18-22 Riseley Street
Ardross, WA 6153

**GUARANTORS:**    John Gillett    Passport# M 5122935 (Australia)
48 Stoneham Road
Attadale, WA 6156 (Western Australia)

Craigcare Group Pty, Ltd.    Tax File# 25100122692
1ˢᵗ Floor, 18-22 Riseley Street
Ardross, WA 6153

**COLLATERAL/
PROJECT:**    A first lien on the Collateral as described in Schedule "C".

**MAXIMUM
LOAN:**    A Loan of Seventeen Million Dollars ($17,000,000) including the FEE, fees and costs in accordance with Schedule A attached.

2.

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

TERMS:

The term of the Loan shall be three (3) years from the date of closing. The closing shall take place not later than August 13, 2010, time of the essence. The time of the essence date was included at the insistence of the Borrower who has represented that it will be in a position to meet all requirements contained herein. by said date.

All interest, points, fees, charges, etc. to be paid to Lender or KFI under the Loan Documents shall be paid net of any and all applicable taxes, tariffs, levies, etc. incurred as a result of the Loan being secured by Collateral situated outside of the United States of America. Borrower is responsible for any such charges in addition to the agreed upon amounts due.

INTEREST:

A. The interest rate for the first year of the Loan shall be equal to the greater of (i) Twelve Percent (12%) or (ii) the Prime Rate plus Eight and Three Quarters Percent (8 3/4%).

B. The interest rate for the second year of the Loan shall be equal to the greater of (i) Eighteen Percent (18%) or (ii) the Prime Rate plus Fourteen and Three Quarters Percent (14 3/4%).

C. The interest rate for the third year of the Loan shall be equal to the greater of (i) Twenty One Percent (21%) or (ii) the Prime Rate plus Seventeen and Three Quarters Percent (17 3/4%).

D. Monthly payments of interest only on the unpaid balance shall be due on the first day of each month for the prior month's interest until the maturity date, at which time the entire balance of principal and accrued and unpaid interest thereon shall be due and payable in full.

E. Monthly payments will be computed on a 30 day month and a 360 day year.

F. Interest from the date of closing to the end of the month in which the closing takes place shall be paid at the time of the closing.

G. As used in herein, the term "Prime Rate" shall mean the daily rate of interest published in The Wall Street Journal from time to time as the "Prime Rate." If more than one "Prime Rate" is published in The Wall Street Journal for a day, or if the daily "Prime Rate" fluctuates over any Thirty (30) day period, the average of such daily "Prime Rates" shall be used for any monthly interest calculation, and such average shall be rounded up to the nearest one-eighth of one percent (0.125%). If The Wall Street Journal ceases to publish the "Prime Rate," the Lender shall select an equivalent publication that publishes such "Prime Rate," and if such "Prime Rates" are no longer generally published or are limited,

BVicomlaw/A.C.N.Gillett.Executed





3

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

regulated or administered by a governmental or quasigovernmental body, then Agent shall elect a comparable interest rate index.

FEE:           Eight Percent (8%) of the Loan amount.

REPAYMENT:    The Loan may be prepaid in full or in part without penalty except there shall be no refund for the FEE, points, fees and the like. The unused portion of any Monthly Prepaid Interest is refundable.

LEGAL MATTERS:   The interests of the Borrower and Lender are or may be different and may conflict, and the Lender's attorney represents only the Lender and not the Borrower and the Borrower is, therefore, advised to employ an attorney of the Borrower's choice licensed to practice in the State of New Jersey to represent the interests of the Borrower.

The Borrower shall be required to pay to the Lender's attorney, reasonable legal fees and expenses of Lender's attorney for services provided to Lender in connection with this transaction.

DOCUMENTATION: KFI's commitment to provide the Loan is subject to the negotiation, execution and delivery of definitive Loan and security agreements, mortgages or deeds of trust, notes, and other documentation and customary certificates and legal opinions (collectively, the "Loan Documents"), which, in each case, will be in form, substance and enforceability satisfactory to KFI in its sole discretion. The Loan Documents shall contain conditions precedent, representations and warranties, covenants, events of default and other terms and conditions consistent with the terms hereof as shall be satisfactory to KFI in its sole discretion and deemed appropriate by KFI for a transaction of the type contemplated herein. Borrower is to provide KFI with certified English translations of all foreign language documents and/or instruments.

ACCEPTANCE
OF COMMITMENT: The commitment and all of its terms and conditions will become effective only upon delivery to this office of a signed copy of this commitment, duly accepted by the Borrower, accompanied with the commitment fee in the amount of Six Hundred Seventy Thousand Dollars ($670,000) which is non-refundable and earned for, among other things, the commitment to provide funds.

Said fee is not refundable under any circumstances, except as agreed to herein.

Notwithstanding anything to the contrary contained in this commitment, the Borrower agrees that the basis for the Loan is the as is market value of the real estate Collateral in its present condition. Market value is defined as a six (6) month sale to a cash buyer. The Borrower understands that KFI will inspect the

 

4

A.C.N. 133800969.Pty Ltd.
Loan Commitment
July 15, 2010

Collateral and will, in its sole discretion, determine the as is market value. Upon making a determination of value, KFI will deliver to Borrower a Loan Offer equal to Fifty Percent (50%) of the as is market value not to exceed the Financing Request. Failure by the Borrower to either accept or reject in writing the Loan Offer within three (3) days of receipt shall be deemed to be a rejection of the Loan Offer. Acceptance by Borrower of the Loan Offer shall constitute a waiver of the right to engage the services of a third party appraiser as described herein. Borrower understands that KFI cannot and will not lend more than Fifty Percent (50%) of the as is market value of the real estate Collateral. If KFI's determination of the value of the property is disputed by Borrower, Borrower may reject the Loan Offer and elect to engage the services of a third party appraiser. If Borrower makes this election, the Borrower and KFI shall mutually agree on a third party MAI appraiser, with proper credentials, contracted by KFI, and any fees for said appraiser to be reimbursed to KFI by Borrower prior to the appraisal being performed. Upon receipt of the determination of value by the third party appraiser, KFI will, at its option, either offer a Loan (not to exceed in any event the Financing Request) of Fifty Percent (50%) of the as is market value of the real estate Collateral as determined by said appraiser, or return the paid portion of the commitment fee.

If the Collateral is determined to have a value which would require KFI to make a Loan of Three Million Dollars ($3,000,000) or less, KFI will not be obligated to make the Loan unless the Borrower provides additional Collateral acceptable to KFI in its sole discretion to increase the amount of this loan to at least Three Million Dollars ($3,000,000). If the Loan amount is not increased, the commitment fee will be earned by KFI.

This letter will become a commitment once signed by all parties and returned with the Six Hundred Seventy Thousand Dollars ($670,000) as outlined above. This commitment will expire August 13, 2010, time of the essence. KFI shall have no obligation with respect to the Loan unless and until this commitment letter is fully executed and received by KFI along with the commitment fee.

**RETURN OF**
**COMMITMENT FEE:**

If KFI is unable to perform its obligations under the terms of this commitment for whatever reason, KFI shall only be obligated to refund the paid portion of the commitment fee. SAID REFUND SHALL BE THE TOTAL EXTENT OF ANY LIABILITY OR OBLIGATION ON THE PART OF KFI UNDER ANY CIRCUMSTANCE. There will be no refund if Borrower does not accept the loan offer(s) made by KFI pursuant to this commitment or Borrower has not complied with all the conditions of this commitment.

aV\commlav\A.C.N.Gillett Executed




5

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

**OTHER:**

a) KFI hereby acknowledges receipt of Ten Thousand Dollars ($10,000) which is non-refundable, for the preparation of this commitment.

b) Borrower agrees upon acceptance of the Loan Offer to forward an additional Ten Thousand Dollars ($10,000) to KFI on account of preliminary due diligence including; without limitation, environmental, survey and title review by KFI and third parties. The acceptance of any such amount by KFI or any third party shall not be construed as evidence that the Borrower has fulfilled all of its obligations under the terms of this commitment. This Ten Thousand Dollars ($10,000) will be applied toward third party fees due in connection with the Loan at the Loan closing.

**EXPENSES:**

Borrower agrees that the Loan shall be without cost to KFI. Borrower assumes liability for and will pay all costs and expenses required to satisfy the conditions hereof and the making of the Loan. Such costs and expenses shall be paid at or prior to the Loan closing, or upon demand if the Loan does not close or if this commitment is terminated. Such obligation shall survive termination. Borrower will also provide airline tickets and hotel accommodations if necessary.

**RELEASES:**

During the term of the Loan, provided all payments of principal and interest on the Loan shall be current on the date of the sale and at the time of the sale and there are no uncured defaults or events of uncured defaults under the Loan Documents, Borrower may sell for cash individual parcels of the Collateral. KFI agrees to release such sold parcels provided that KFI receives the Release Price for such parcel which will be applied to the outstanding balance. The Release price will be the greater of:

(i)     80% of the net sale price of the parcel taking into account reasonable and customary closing adjustments and customary sales commissions;

(ii)    75% of the gross sale price of the parcel;

(iii)   the minimum release amount as agreed to on a schedule to be approved by KFI prior to closing.

(The greater of the above three amounts being the "Release Price".)

**GOVERNING LAW, ETC.**

This commitment may be executed in counterparts which, taken together, shall constitute one original. This commitment is for the benefit of the Borrower only and may not be assigned except upon the prior written consent of KFI, which consent may be withheld for any reason or no reason. No party other than Borrower or a permitted assignee may rely upon the terms and conditions of this commitment. This commitment will be governed by and construed in accordance

BV\com\av7A.C.N.Gillsit.Executed





6

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

with the laws of the State of New Jersey without regard to the principles of conflicts of laws thereof.

**WAIVER:**

No failure on the part of KFI to exercise and no delay in exercising any rights under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by KFI of any right under the Loan Documents preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under the Loan Documents or under any document delivered thereunder or in connection therewith or allowed to KFI in law or equity shall be deemed cumulative and may be exercised from time to time.

This Commitment is executed by an individual strictly in his capacity as a representative of the Lender. By the acceptance of this Commitment, Borrower agrees that no representative, member, partner, shareholder, employee or agent of the Lender shall be personally liable for the payment of any claim or the performance of any obligations hereunder.

**LIMITATION OF DAMAGES:**

KFI SHALL HAVE NO LIABILITY TO BORROWER, OR ANY OTHER ENTITY OR PERSON, UNDER ANY THEORY OF LAW OR EQUITY FOR ANY AMOUNT IN EXCESS OF THE PAID PORTION OF THE COMMITMENT FEE. BORROWER ACKNOWLEDGES THAT THIS LIMITATION OF DAMAGES CLAUSE IS REASONABLE. BORROWER AGREES NOT TO PURSUE ANY CLAIM IN EXCESS OF THE ABOVE SUM.

**WAIVER OF TRIAL BY JURY:**

BORROWER AND LENDER EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, COUNTERCLAIM, OR CROSS-CLAIM ARISING IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO THIS COMMITMENT, THE OTHER LOAN DOCUMENTS, THE OBLIGATION, THE COLLATERAL, OR ANY RELATED TRANSACTION.

**MISCELLANEOUS:**  BORROWER UNDERSTANDS THAT KFI CANNOT AND WOULD NOT ENTER INTO THIS COMMITMENT WITHOUT BORROWER'S AGREEMENT TO THE LIMITATION OF DAMAGES, CHOICE OF FORUM AND WAIVER OF TRIAL BY JURY CLAUSES CONTAINED HEREIN.

BORROWER AND GUARANTOR(S) UNDERSTAND THAT THEY ARE OBLIGATED TO DISCLOSE TO LENDER THE NAME AND ADDRESS OF ANY THIRD PARTY FEE PROVIDER(S). IN THE EVENT THERE

BV\comlaw\A.C.N.Gillett.Executed




A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

7.

IS A THIRD PARTY FEE PROVIDER, THE THIRD PARTY FEE PROVIDER SHALL BE REQUIRED TO SIGN THIS LOAN COMMITMENT. IN THE EVENT THAT BORROWER FAILS TO MAKE SUCH DISCLOSURE, BORROWER AND GUARANTOR(S) AGREE TO INDEMNIFY AND HOLD HARMLESS LENDER AGAINST ANY AND ALL CLAIMS ASSERTED BY SUCH UNDISCLOSED PARTY AS WELL AS ANY ATTORNEYS' FEES INCURRED IN DEFENDING AGAINST SAME.

**COMMITMENT FEE MODIFICATION:**

Notwithstanding the above requirement to pay Six Hundred Seventy Thousand Dollars ($670,000) at the signing of the commitment, as consideration for the parties unconditionally and irrevocably waiving all right to trial by jury and the parties agreeing to the Choice of Forum and Limitation of Damages clauses, KFI will accept payment of the Six Hundred Seventy Thousand Dollars ($670,000) in the following manner:

a)    Two Hundred Fifty Thousand Dollars ($200,000) to be paid at the time this commitment is signed, prior to our due diligence, which signing will be no later than July 16, 2010, time of the essence;

b)    Four Hundred Seventy Thousand Dollars ($470,000) to be paid at the closing or upon Borrower electing not to proceed to a Loan closing. In addition, any default by the Borrower under this commitment, or other failure of Borrower to comply with this commitment, or misrepresentation by Borrower of any fact or state of facts to KFI either in connection with this commitment or otherwise, or any material adverse change of any type shall not relieve Borrower of its obligation to pay such amount to KFI.

Notwithstanding the above, in the event KFI valuation results in a Loan Offer of less than Seventeen Million Dollars ($17,000,000), Borrower may reject the offer and terminate this loan commitment. Provided Borrower does so in writing within three (3) business days of receipt of the Loan Offer, time of the essence, upon execution of a release KFI would waive the balance of commitment fee due in b) above, and the parties would have no further obligation to each other.

Borrower acknowledges that Schedule "B" annexed hereto represents conditions of the Loan commitment required by Lender and that this document would not be executed by Lender without Borrower's agreement thereto. Borrower further acknowledges that each and every delivery required under this Loan Commitment (including those required under Schedule "B") must be made directly to KFI or its designated legal counsel. Any deliveries made to any other person or entity (including without limitation

aW\comlaw/A.C.N.Gillett.Executed





8

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

any appraiser or broker involved with the proposed loan transaction) shall not be deemed a delivery to KFI as required hereunder.

This document is an arms length and negotiated agreement. It shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

Sincerely,
KENNEDY FUNDING, INC.

BY:

Gregg Wolfer, Co-Chief Executive Officer

DATE: 7-15-10

COMMITMENT ACCEPTED
BORROWERS:
A.C.N. 133800969 PTY, LTD.

BY:

John Gillett, President

GUARANTORS:
CRAIGCARE GROUP PTY, LTD.

BY:

John Gillett, President

John Gillett, Individually and as Guarantor

DATE: 12 - 07 - 2010

aVicomlav/A.C.N.Gillett.Executed

9:

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 18, 2010

SCHEDULE "A"

LOAN AMOUNT                                                  $17,000,000

PROPOSED LOAN AND USE OF PROCEEDS

FEE (8% of the Loan Amount)                    $1,360,000
(Non-Refundable)

MONTHLY PREPAID INTEREST                    UNKNOWN
(Refundable if unused)

CLOSING COSTS                                          UNKNOWN

BROKERAGE COMMISSION                         $187,000
AAG Finance Pty Ltd. (1.1%)

BALANCE OF COMMITMENT FEE                 $420,000.



av-com\pv\A.C.N.Gillett. Executed

10

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

## SCHEDULE "B"

These General Conditions are part of the attached commitment and deemed a part hereof as if set forth therein.

1.  Survey: The Borrower shall provide a survey certified to the Lender and the title company satisfactory to the title company on each piece of Collateral prepared by a surveyor licensed by the State showing the project to be free of encroachments, overlapped and other survey defects delineating all wetlands on the property (if any), all in accordance with the Lender's survey requirements.

2.  Insurance: The Borrower must furnish liability and hazard insurance in a sum not less than the replacement value of the Collateral but in no event less than the amount of the Loan insured by a company or companies satisfactory to Lender.

3.  Title: The Lender shall receive a first lien on the Collateral acceptable to its Counsel and Borrower shall provide a paid title insurance policy in an amount no less than the amount of the Loan insured by a title company or companies satisfactory to Lender.

4.  Flood Insurance: If any material part of any parcel of the Collateral is located in an area designated as being subject to a special flood hazard, Borrower shall obtain all available flood insurance. If insurance is not available, and if such unavailability legally precludes the mortgage from covering such affected parcel, such parcel shall be removed from the Collateral and all Loan amounts recalculated.

5.  Easements: All necessary easements for utilities, public road access, parking or otherwise shall be provided for prior to closing.

6.  Additional Collateral: As additional Collateral Borrower agrees to allow Lender to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by Borrower.

7.  Approval of Lender's Counsel: The title in the project and the form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be satisfactory to and approved by Counsel to the Lender in its sole discretion.

8.  Approval of Borrower's Counsel, Etc.: Borrower acknowledges that it has consulted with counsel of its choice and with such other experts and advisors as it deemed necessary in connection with the negotiation, execution, and delivery of this Commitment and Borrower acknowledges that it will consult with counsel of its choice and with such other experts and advisors as it deems necessary in connection with the negotiation,

BVcom\av\A.C.N.Gillen.Executed





11

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

execution and delivery of the other Loan Documents. This Commitment and the other Loan Documents shall be construed without regard to any presumption or rule requiring that they be construed against the party causing them, or any part of them, to be drafted.

9.  Representations and Warranties of Borrower and Guarantor:   Customary for transactions of this type, including, but not limited to, the following:

(a)  Neither the Loan Documents nor the performance by Borrower of its obligations thereunder violate any provisions of law, of Borrower's partnership agreement, corporate by-laws, or of any agreement which is binding upon Borrower or the Guarantors. No action or permission by any governmental commission, bureau or agency is required in connection with the execution or the performance of the Loan Documents by Borrower, and Borrower is not subject to filing, reporting or like requirements of any governmental commission, bureau or agency charged with control or supervision of environmental concern.

(b)  All financial information furnished or disclosed to KFI by Borrower and Guarantors touching upon the financial condition of any of them is true and correct as of the date furnished, and there has been no omission of any material fact relating thereto, and there has been no material adverse change in the financial condition, operations or business of any of them since the date of such financial information. Borrower and Guarantor(s) authorize KFI to obtain any credit information which KFI deems appropriate or necessary regarding the Borrower and/or Guarantor(s).

(c)  Borrower or Guarantors is not in default in the performance, observance or fulfillment of any of the obligations or conditions contained in any agreement or instrument to which it is a party, or with respect to any evidence of indebtedness or obligation for borrowed money which affects in any way the Collateral, nor does any condition exist which, upon the lapse of time or giving of notice, or both, would constitute an event of default under, or grounds for termination of, any such agreement or instrument.

(d)  No actions, suits or proceedings at law or in equity are pending or, to the best of Borrower's or Guarantor's knowledge, threatened, in any court or before any federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality against or affecting Borrower, the Guarantors, or any of its properties or rights which, if adversely determined would materially adversely affect the financial condition of Borrower or Guarantors or materially impair the right of either to carry on its business substantially as now conducted, nor is either in default with respect to any judgement, writ, injunction, decree, rule or regulation of any court or federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality.

s\Vicom\av\A.C.N Gillen Executed



12

A.C.N. 133800969 Pty Ltd,
Loan Commitment
July 15, 2010

(e)     At Lender's option, Borrower will establish and maintain reserves for ongoing taxes and insurance premiums, prepaid interest and replacement reserves in amounts acceptable to Lender. The tax and insurance reserve will be funded up front and from monthly cash flow and will be 1/12th of the annual amount payable. All funds held in the reserve accounts will be held for the benefit of the Borrower; except for the tax and insurance reserve (which shall be for the benefit of the Lender).

10.     Miscellaneous:  Prior to the closing of the Loan and disbursement of funds, in each instance the Borrower must comply with the following:

(a)     The Borrower is to produce such evidence as Lender may require to demonstrate current full compliance with all applicable zoning, health, environmental and safety laws, ordinances and regulations (including without limit approval of local, private or public sewage or water utility). The Borrower shall certify or supply other satisfactory evidence to the Lender at the time of the closing that there is no action or proceeding pending before any Court or Administrative Agency with respect to the validity of any laws, ordinances or regulations, and any certifications or permits issued thereunder, pertaining to the premises. The Borrower shall certify or supply other evidence satisfactory to the Lender that the Borrower is not a party to any existing or pending or threatened litigation, unless specifically noted herein.

(b)     All appropriate approvals necessary for the current use and the completed project contemplated by this commitment (if applicable) must be provided and must meet all applicable requirements of all governmental authorities having jurisdiction, including, but not limited to subdivision and site plan approvals, the Department of Environmental Protection and its several subdepartments as they pertain to potable water supply, sewage discharge and sewage connection, use of septic tanks or alternatives. The Lender shall require prior to closing, evidence satisfactory to it and its Counsel of full compliance with all Environmental Clean-Up Responsibility Acts and that no action is pending or liens imposed under any Spill Compensation and/or Control Acts.

(c)     During the term of the Loan, there shall be no additional financing nor any transfer of title, not contemplated in the Loan Documents without the prior written approval of the Lender.

(d)     Execution by the Borrower of such Loan Documents including, but not limited to, a mortgage and mortgage note, satisfactory in form and substance to the Lender and its Counsel, including a prohibition against the transfer of title of any

BV:lebril:av:A.C.N.Gillett.Executed.





A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

13

of the Collateral not contemplated in the Loan Documents, and if the Borrower is a corporation or partnership, a change in the management or controlling interest in the Borrower. Borrower may prepay the Lender at any time, in whole or in part, without penalty except for all of the FEE which is considered earned at the time of closing.

(e)    This commitment is subject to the accuracy of all information, representations, exhibits and other materials submitted with or in support of the Loan request and there must be no adverse change in the set of facts prior to the disbursements of funds or during the term of the Loan. This commitment may be terminated by KFI and the Commitment Fee retained and earned by KFI in the event of the following:

    (i)    If the Borrower shall fail to comply with any of the terms or conditions hereof.
    (ii)    In the event of a sale, conveyance or other market of any of the Collateral.
    (iii)    In the event of a materially adverse change in the financial condition of the Borrower or any Guarantor.
    (iv).    Any fraudulent material misrepresentation or any omission or concealment by the Borrower or any Guarantor of any material fact.
    (v).    For any good faith reason.

(f)    In the event of any default during the term of this Commitment, KFI may, at its option, require immediate payment of the balance of the Commitment Fee and KFI may terminate the Commitment and retain the paid portion of the Commitment Fee.

(g)    The Borrower has the obligation to disclose all material facts, past and present, related to the Borrower, Guarantors, the Collateral, the transaction, etc..

(h).    The Borrower specifically acknowledges and agrees that KFI and/or Lender rely on counsel opinion letters relating to, among other items, usury. This commitment is subject to the express condition that at no time will the Borrower be obligated or required to pay interest at a rate which could subject KFI and/or Lender to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If, by the terms of this commitment or the Loan Documents the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest shall be deemed to be immediately reduced to such maximum rate and the portion, if any, of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance. All amounts due by Borrower in

aVicbmav/A_C.N Gillett.Executed



14

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

connection with the Loan shall be paid in U.S. dollars without regard to currency or exchange rate fluctuation or risk:

(i)     (i)    At Lender's option at closing, the owner of the collateral and the Borrower shall be a newly formed single-purpose "bankruptcy remote" limited liability company or limited partnership acceptable to Lender. The Borrower's organizational documents shall contain provisions satisfactory to Lender. These provisions may not be amended in any material respect during the term of the Loan without Lender's consent. The sole business activity of the Borrower shall be the ownership and operation of the Mortgage Property. The Borrower shall have no debt other than the Loan at closing. The Borrower shall be prohibited from incurring additional debt other than the Loan throughout the Loan term, including without limitation, partnership debt. Any advances made to Borrower from any partner, member of Borrower or shareholder shall be in the form of equity not debt.

11.    Validity of Loan: The Loan and the closing thereof shall in all respects be legal and not violate any applicable law or other requirements of any governmental authority. The Borrower will submit to the Lender at closing a current written opinion by the Borrower's legal Counsel, satisfactory to Lender, to the effect, among other things, that all Loan Documents are valid and binding upon the Borrower and any other mortgagor and are enforceable in accordance with their terms and are legal and do not violate any local, state or federal laws including, but not limited to, all usury laws. Once the Loan is closed and funded by the Lender, the Loan shall be governed and construed pursuant to the laws of the State of New Jersey. Borrower understands that KFI has entered into this Commitment expecting to receive a return on the Loan as set forth in this Loan Commitment. In the event that the jurisdiction in which the Collateral is located and/or from which payment is made requires the payment of a tax, assessment, or other charges in connection with the Loan by Lender, Borrower will be responsible for the payment of such tax, assessment or charge and shall reimburse Lender for any payment required to be made by the Lender.

12.    Governing Law: This Commitment and the other Loan Documents (except the Mortgage which shall be construed in accordance with the law of the situs of the realty), shall be governed by and construed in accordance with the internal substantive laws of the State of New Jersey, without regard to the choice of law principles of such state.

13.    Usury: It is expressly understood and acknowledged by the Borrower that KFI may not be familiar with the usury statutes in the Collateral's jurisdiction and relies on counsel opinions delivered at closing. This commitment is subject to the express condition that at no time shall the Borrower be obligated or required to pay interest at a rate which could subject KFI or the Co-Lenders to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If by the terms of this commitment or the note the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of

BVicomlaw/A.C.N.Gillen.Executed



15

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

interest hereunder and/or under the note shall be deemed to be immediately reduced to such maximum rate and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of principal balance or; if the Loan has not closed shall be void, and if KFI deems it a hardship to close the Loan under the usury statutes, all fees paid to KFI shall be refunded and this commitment shall be null and void.

14.  Choice of Forum:   Borrower and Guarantor(s) consent to the jurisdiction of any state or federal court sitting in the State of New Jersey for adjudication of any dispute between the Borrower and Guarantor(s), their agents, servants and/or employees and KFI under any theory of law, in connection with, out of, or otherwise relating to this Commitment and any related transactions and that venue shall be proper in any such court to the exclusion of the courts in any other state or country.   The Borrower further agrees that such designated forum is proper and convenient.   By executing this commitment, Borrower and Guarantor(s) authorize KFI to obtain credit information on Borrower and Guarantor.

15.  WAIVER OF TRIAL BY JURY:    Borrower and Lender each hereby unconditionally and irrevocably waive any and all right to trial by jury in any suit, counterclaim, or cross-claim arising in connection with, out of, or otherwise relating to this Commitment, the other Loan Documents, the Obligation, the Collateral, or any related transaction.

16.  No Oral Modifications:  Notwithstanding any course of dealing between the parties, no amendment, modification, rescission, waiver, or release of any provision of this Commitment shall be effective unless the same shall be in writing and signed by the Borrower and Lender.

17.  Complete Agreement:  This Commitment, together with the other Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter of this Mortgage Loan, and supersedes all prior proposals, negotiations, agreements, and understanding relating to such subject matter.   In entering into this agreement, Borrower acknowledges that it is relying on no statement, representation or agent of the Lender, except for the agreements of Lender set forth herein.

18.  Survival of Commitment:  Borrower and Lender hereby acknowledge and agree that this commitment shall not survive closing.  Furthermore, notwithstanding the provisions of paragraph 16 above, the parties specifically acknowledge and agree that the terms and conditions of this Loan may be modified by mutual agreement at any time up to and including the date of closing and that any such modifications shall be incorporated directly into the Loan Documents without the need to amend this Commitment.

BY\comlaw\A.C.N.Gillett.Executed

16

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

19.    **Execution.**    This Loan Commitment may be executed in any number of counterparts, each in which shall be considered an original. Delivery of an executed copy by one party to the other, via facsimile, shall constitute a valid delivery.

The undersigned does hereby accept this Commitment and does hereby agree to keep and perform each and every item and condition hereby before set forth and do acknowledge that the performance of such terms and conditions are obligations of the undersigned. The undersigned acknowledges and agrees that Lender requires satisfaction of the conditions herein (and in the Loan Documents) at least 48 hours prior to the closing and funding of the Loan. The attorney for the Borrower has reviewed this commitment and has explained all of its terms and ramifications to the Borrower and the Guarantor.
**ACCEPTED:**

BORROWERS:
A.C.N. 133800969 PTY, LTD.

BY:    _____
        John Gillett, President

GUARANTORS:
CRAIGCARE GROUP PTY, LTD.

BY:    _____
        John Gillett, President.

        _____
        John Gillett, Individually and as Guarantor

DATE:    16 - 07 - 2010

a\com\av\A.C.N.Gillett Executed

17

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

## SCHEDULE "C"
### (COLLATERAL / PROJECT DESCRIPTION)
### PROVIDED BY BORROWER

A first lien on:

1.  Craigcare Albany (Beaufort Road and Minerva Street, Yakamia, Via Albany Western Australia)

Albany is the largest regional city in the south west of Western Australia, situated approximately 400 klm south of Perth.

The facility is located in Beaufort Road an older established residential area with a total site area of approximately 8214 square metres.

This complex comprises of an older style "purpose built" L shaped nursing home facility with 60 beds. Alterations are currently being undertaken at the facility to increase the number of approved beds to 85. This work is due to be completed by mid August at a cost of approximately $1.2m to be paid by Borrower.

As part of the complex there are an additional 34 one and two bedroom retirement condo units in four groups of single and two level buildings. There is a small cottage at the rear with frontage to Minerva Street. The units are owned by Craigcare and leased out on 30 year terms.

Eleven of the retirement village beds have been bought back by Craigcare to facilitate the upgrading and conversion works currently in progress.

NOI = $1,020,000

2.  Craigcare Maylands (6 Third Avenue East, Maylands Western Australia)

Maylands is an older well established suburb adjacent to the Perth CBD. Perth is the capital city of Western Australia. Craigcare Maylands is situated on a magnificent elevated 2788 square metre site. The site has sweeping panoramic views across the Swan River to the Burswood entertainment and recreational facilities with the city skyline in the background.

Situated in Third Avenue East, Maylands this facility is an older style 92 bed nursing home which was substantially upgraded 3 years ago. The facility continues to enjoy excellent occupancy and achieves the highest operating margins in the Craigcare Group.

SVKamlaw/A.C.N.Gillett Executed





18

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

Having been part of the Maylands community for over 30 years this facility has an excellent reputation in the local community for the quality of care provided. The complex has a mix of predominantly twin and single rooms and commercial kitchen and laundry services are provided on site.

NOI = $1,870,000

### 3. Craigview Grove Retirement Village (153 Stock Road, Bicton Western Australia)

Craigview Grove Retirement Village is situated in Stock Road Bicton, an affluent residential area approximately 11 klm from the Perth CBD. The total site area is 1.3544 hectares (3.4 acres).

There are a multitude of services close to the facility; Melville Plaza is 200 metres away, Bicton Hospital is close by and Stock Road has excellent public transport services.

Erected on the site is a purpose built retirement village ranging from single to three level buildings constructed in 1996. The site is now fully developed and comprises of 71 units, main administration area, recreation complex, dining and lounge areas, indoor swimming pool and a variety of community type facilities.

A Circa 1917 heritage building on site has been tastefully converted to a lounge dining, function area, restaurant and dining area complete with full commercial kitchen, billiard room and amenities.

The complex enjoys 98-100% occupancy at all times and has experienced substantial and consistent increases in value particularly over the last 5 years.

NOI = $680,000

### 4. ROXBUROUGH PARK
####       PATULLOS LANE & 3 WEDGWOOD DRIVE
####       ROXBUROUGH PARK, VICTORIA, AUSTRALIA

This facility was opened in two stages in 2003 and 2004 and was closed approximately two years ago when the developer of this and the adjacent retirement village complex went into voluntary liquidation. At the time of closure the facility was 98% occupied; all of the residents were relocated to other facilities at the time of closure.

The facility has remained vacant while Craigcare seeks approval for 132 beds to operate the facility. The facility is being purchased by Craigcare inclusive of the 132 beds and an adjoining vacant parcel of land with an area of approximately 1.5 acres.

The facility is situated in Wedgwood Drive, Roxburgh Park, a developing residential area adjacent to a retirement village complex, approximately 21 klm's north of the Melbourne CBD in Victoria.

aW.comlaw\A.C.N.Gillett.Executed





19

A.C.N. 133800969 Pty Ltd.
Loan Commitment
July 15, 2010

Erected on the land is a single-level "purpose built" facility which has a range of single and twin room accommodations with private ensuites. There are a total of 132 beds within the five building modules.

The facility has modern furniture and fittings all in excellent condition. There is a main feature lounge/dining within each accommodation wing together with small sitting areas adjacent to the link between each wing. Each section of the building has nurse's stations, clean and dirty utility rooms and store rooms.

The main core building accommodates general office, support office, Director of Nursing office, interview office, staff education and training area, staff change room and amenity area located adjacent to the change rooms. In addition there is a café area for special functions and activities.

A full commercial kitchen including walk-in cool-room and freezer together with a pantry is also situated in the central core service building area. A full on-site laundry service which incorporates three commercial washers and dryers is also located in this area of the building.

Craigcare has entered into a contract to purchase the facility inclusive of 132 beds and an adjoining parcel of land with an area of 1.5 acres together with all plant and equipment, fixtures and fittings in the amount of $17 million.

As the building is complete with all necessary plant and equipment fittings and fixtures Craigcare expects to be able to open the facility within four weeks of settlement.

PP= $17,000,000

B:V:com\av/A.C.N.Gillett.Executed



## EXHIBIT B

Appraisals/Evaluations

4